IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| RLI Insurance Company, | ) | |
| | ) | Civil Action No. 3:18-cv-02633-JMC |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER AND OPINION** |
| | ) | |
| Architrave, Inc., Mount Moriah | ) | |
| Missionary Baptist Church, Inc., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This action arises from an insurance contract dispute between Plaintiff RLI Insurance Company, a professional liability insurer, and Defendant Architrave, Inc., an architecture firm. The matters before the court are Plaintiff's Motion for Judgment on the Pleadings (ECF No. 18) and Defendant Architrave's Motion for Judgment on the Pleadings (ECF No. 24). For the reasons below, the court **DENIES** Plaintiff RLI Insurance Company's Motion for Judgment on the Pleadings (ECF No. 18) and **DENIES** Defendants' Motion for Judgment on the Pleadings (ECF No. 24).

**I. FACTUAL AND PROCEDURAL BACKGROUND**

On September 26, 2018, Plaintiff filed a Complaint pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 (2010). (ECF Nos. 1, 5.) On October 8, 2018, Plaintiff amended the Complaint, adding Defendant Mount Moriah Missionary Baptist Church, Inc ("the Church").[1] (ECF No. 5.)

---

[1] "The Church is an eleemosynary corporation organized in the State of South Carolina and having [a] principal place of worship the church facilities [in] the City of North Charleston in Charleston County, South Carolina." (ECF No. 1-3 at 5.) Plaintiff claims that the Church "has an interest in this litigation as a potential judgment creditor of [Defendant] Architrave." (ECF No. 5 at 2, 4 ¶¶ 3, 13.)

1

Plaintiff issued two insurance policies (the "Policies") to Defendant Architrave: "Professional Liability Policy Design Professionals number RDP0024719 for the Policy Period May 6, 2016 to May 6, 2017" ("Policy 2016-17") and "Professional Liability Policy Design Professionals number RDP0028866 for the Policy Period May 6, 2017 to May 6, 2018, ("Policy 2017-18") (*Id.* at 2 ¶¶ 6, 7.) The Policies are "Claims Made and Reported Polic[ies]" that "provide coverage, pursuant to their terms and conditions, for 'Damages or Claim Expenses as a result of a Claim for a Wrongful Act' which is 'first made against the Insured during the Policy Period . . . .'" (*Id.* at 6.)

On September 25, 2017, the Church filed a lawsuit in the Charleston County, South Carolina Court of Common Pleas ("Underlying Lawsuit") arising from the construction of a worship center. *See Mt. Moriah Missionary Baptist Church v. Architrave, Inc., et. al.*, C/A No. 2017-CP-10-4880 (filed September 25, 2017). (*Id.* at 5 ¶ 20.) Plaintiff alleges that, on November 6, 2017, "[Defendant] Architrave provided notice of the Underlying Lawsuit to [Plaintiff] under [Policy 2017-18] . . . at which time [Plaintiff] requested information regarding the claim, including requests for 'any correspondence in your possession pertaining to the issues set forth in the complaint.'" (*Id.* at 4 ¶ 14.) Defendant Architrave allegedly represented that it communicated the builder, Bobbit Design Build and "attended a meeting in February of 2017 where the Church's construction problems were discussed and Bobbit offered a proposal to address the issues." (*Id.* at 4 ¶ 15.) Plaintiff maintains that "[Defendant] Architrave asserted that after the meeting, it 'did not hear anything else about the matter or realize that the church was considering a lawsuit until we were served.'" (*Id.*) On December 1, 2017, Plaintiff agreed to defend Defendant Architrave under Policy 2017-18. (*Id.* at 4 ¶ 16.) Subsequently, Defendant Architrave provided Plaintiff with the Church's letters dated October 17, 2016 ("October Letter") and December 21, 2016 ("December

Letter") (*Id.* at 4 ¶ 17.) Upon receiving the Church's letters, Plaintiff issued a supplemental reservation of rights letter to Defendant Architrave (ECF No. 5 at 5 ¶ 21) and filed a Complaint (ECF No. 1).

On November 19, 2018, Plaintiff filed a Motion for Judgment on the Pleadings, claiming that Defendant Architrave "has not met its burden of showing that coverage has been triggered under either policy, and [Plaintiff] owes no duty to defend or indemnify [Defendant Architrave]" in the Underlying Lawsuit. (ECF No. 18 at 1-2.) Plaintiff requests (1) a court order declaring that Plaintiff "owes no duty to defend or indemnify [Defendant Architrave] because the Claim was not first made and reported to [Plaintiff] during an applicable Policy Period" and (2) seeks the recovery of costs and expenses incurred defending Defendant Architrave in the Underlying Lawsuit. (*Id.* at 3 ¶ 9.) On December 17, 2018, Defendant Architrave filed a Motion for Judgment on the Pleadings, seeking a court order declaring that Plaintiff has a duty to defend and indemnify Defendant Architrave because the Underlying Lawsuit, not the Church's letters, triggered the Policies. (ECF No. 24 at 1.)

## II. LEGAL STANDARDS

The Federal Rules of Civil Procedure provide that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings is intended to test the legal sufficiency of the complaint and will operate to dispose of claims "where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noted facts." *Cont'l Cleaning Serv. v. UPS*, C/A No. 1:98-cv-1056, 1999 WL 1939249, at *1 (M.D.N.C. Apr. 13, 1999 (citing *Herbert Abstract v. Touchstone Props., Inc.*, 914 F.2d 74, 76 (5th Cir. 1990)). "An issue of fact is deemed to be material if the outcome of the case might be

altered by the resolution of the issue one way rather than another." *Walker v. Liberty Mut. Ins. Co.*, C/A No. 4:16-cv-01388-RBH, 2017 WL 1020885, at *1 (D.S.C. Mar. 16, 2017) (citing 5C Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1368 (3d ed. 2011)). "[A] motion for judgment on the pleadings is decided under the same standard as a motion to dismiss under Rule 12(b)(6)." *Deutsche Bank Nat'l Trust Co. v. IRS*, 361 F. App'x 527, 529 (4th Cir. 2010) (citing *Independence News, Inc. v. City of Charlotte*, 568 F.3d 148, 154 (4th Cir. 2009)). A motion pursuant to Fed. R. Civ. P. 12(b)(6) "should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The key difference between a Rule 12(b)(6) motion and a Rule 12(c) motion, the court "consider[s] the answer as well as the complaint" and "documents incorporated by reference in the pleadings." *Fitchett v. Cnty. of Horry*, C/A No. 4:10-cv-1648-TLW-TER, 2011 WL 4435756, at *3 (D.S.C. Aug. 10, 2011) (citations omitted).

Under South Carolina law, insurance policies are contracts and are subject to the general rules of contract construction. *Am. Credit of Sumter, Inc. v. Nationwide Mut. Ins. Co.,* 663 S.E.2d 492, 495 (2008) (citation omitted). When interpreting an insurance application or insurance policy, courts "must give policy language its plain, ordinary, and popular meaning." *Id.* Moreover, an "insurance policy is to be liberally construed in favor of the insured and strictly construed against

4

the insurer . . . [and] exclusions in an insurance policy are always construed most strongly against the insurer." *Id.* South Carolina courts have concluded that, "[a]n insurance policy is a contract between the insured and the insurance company, and the policy's terms are to be construed according to the law of contracts." *Williams v. Gov't Emps. Ins. Co.*, 762 S.E.2d 705, 709 (S.C. 2014). "The burden of proof is on the insured to show that a claim falls within the coverage of an insurance contract." *Sunex Int'l, Inc. v. Travelers Indem. Co. of Ill.*, 185 F. Supp. 2d. 614, 617 (D.S.C. 2001). "'Where the contract's language is clear and unambiguous, the language alone determines the contract's force and effect.'" *Id.* (quoting *McGill v. Moore*, 672 S.E.2d 571, 574 (S.C. 2009)). "'It is a question of law for the court whether the language of a contract is ambiguous.'" *Id.* at 710 (quoting *S.C. Dep't of Nat. Res. v. Town of McClellanville*, 550 S.E.2d 299, 302-03 (S.C. 2001)). "'A contract is ambiguous when it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.'" *Id.* (quoting *Hawkins v. Greenwood Dev. Corp.*, 493 S.E.2d 875, 878 (S.C. Ct. App. 1997)). "'Ambiguous or conflicting terms in an insurance policy must be construed liberally in favor of the insured and strictly against the insurer.'" *Id.* (quoting *Diamond State Ins. Co. v. Homestead Indus., Inc.*, 456 S.E.2d 912, 915 (S.C. 1995)). "In insurance policies, exclusion clauses are to be narrowly construed, and inclusion clauses are to be broadly construed." *See Hutchinson v. Liberty Life Ins. Co.*, 743 S.E.2d 827, 829 (S.C. 2013); *see also McPherson ex rel. McPherson v. Mich. Mut. Ins. Co.*, 426 S.E.2d 770, 771 (S.C. 1993). "However, these rules of construction, inuring to the benefit of the insured, do not trump clear and unambiguous policy terms because 'if the intention of the parties is clear, courts have no authority to torture the meaning of policy language to extend or defeat coverage that was

never intended by the parties.'" *MGC Mgmt. of Charleston, Inc. v. Kinghorn Ins. Agency*, 520 S.E.2d 820, 823 (S.C. Ct. App. 1999) (citing *Diamond State*, 456 S.E.2d at 915).

## III. ANALYSIS

A. The Parties' Arguments

Plaintiff claims that Defendant Architrave failed to timely notify and report the Church's letters and therefore did not trigger coverage under the Policies. (ECF No. 5.) Plaintiff asserts that the Church's letters are "a Claim under the plain language of [the Policies]" which is defined as "a demand received by the Insured for money or services . . . include[ing] but is not limited to lawsuits, petitions, arbitrations [,] or other alternative dispute resolution requests filed against the Insured . . . and which alleges a Wrongful Act." (ECF No. 27 at 3.) (emphasis added). Furthermore, Plaintiff asserts that the Church's letters and the Underlying Lawsuit "are one Claim, first made on October 17, 2016 – prior to the inception of the [2017-18 Policy]." (ECF No. 18-1 at 12, 15.) Plaintiff also claims that "there is no coverage under the 2016-17 Policy because the Claim was not first reported during the 2016-17 policy period" because "although the Claim was first made against [Defendant] Architrave during the 2016-17 Policy Period,[2] the Claim was not first *reported* to [Plaintiff] until *six months* after the 2016-17 Policy lapsed." (ECF No. 18-1 at 18.) (emphasis in original).

Defendant Architrave asserts that the Demand Letters "cannot reasonably be construed as alleging a 'Claim for a Wrongful Act,'" thus "it had no duty under the applicable policies to provided [Plaintiff] with notice of such letters." Defendant Architrave also opposes the policy interpretation advanced by Plaintiff. Specifically, Defendant Architrave claims that the Church's

---

[2] Plaintiff states "the Policy Period for the 2016-17 Policy is May 6, 2016 to May 6, 2017." (ECF No. 18-1 at 18.)

6

letters "do not contain any allegation of a 'Wrongful Act'" under any reasonable construction of the pleadings. (ECF No. 24 at 1.)

B. The Policies' Terms and Conditions

Plaintiff's Amended Complaint includes the following excerpt of the Policies' terms and conditions:

**PROFESSIONAL LIABILITY POLICY DESIGN PROFESSIONALS**

This is a Claims Made and Reported Policy. This Policy requires that a Claim be first made against the Insured during the Policy Period and reported to the Insurer, in writing, during the Policy Period or Automatic Extended Reporting Period.

This Policy contains provisions which limit the amount of Claim Expenses the Insurer is responsible to pay in connection with Claims. Claim Expenses shall be subject to any Deductible amount. The payment of Claim Expenses will reduce the Limits of Liability stated in Item 3. of the Declarations.

In consideration of the payment of the premium, stated and in reliance upon the statements made to the Insurer in the Application forming a part hereof and its attachments and the material incorporated therein, RLI insurance Company, herein called the "Insurer," and the Named Insured agree as follows:

**INSURING AGREEMENT**

(1) To pay on behalf of the Insured all sums in excess of the Deductible, which the Insured shall become legally obligated to pay as Damages or Claim Expenses as a result of a Claim for a Wrongful Act to which this insurance applies, including a Claim for a Wrongful Act for Personal Injury.

This insurance applies to a Claim for a Wrongful Act to which this insurance applies, only if:

(i) the Claim is first made against the Insured during the Policy Period and first reported to the Insurer, in writing, during that Policy Period or during the sixty (60) days immediately following the effective dates of cancellation or nonrenewal, pursuant to Section 9. a. of this Policy;

(ii) such Wrongful Act was committed subsequent to the Retroactive Date(s) stated in Item 6. of the Declarations; and

(iii) none of the Insured's directors, officers, principals, partners or insurance managers knew or could have reasonably expected that such Wrongful Act might

give rise to a Claim, either prior to the inception date of this Policy, or the inception date of an earlier policy, where this Policy is issued by the Insurer as a continuous renewal or replacement of such earlier policy, issued by the Insurer.

**DEFINITIONS**

When used in this Policy:

"Claim(s)" means a demand received by the Insured for money or services and which alleges a Wrongful Act. Claim(s) includes but is not limited to lawsuits, petitions, arbitrations or other alternative dispute resolution requests filed against the Insured.

"Policy Period" means the period from the effective date of this Policy to the Policy expiration date as stated in Item 2. of the Declarations or its earlier termination date, if any. Policy Period does not include any Automatic Extended Reporting Period. If the length of the Policy Period is the same as the Policy Year, the terms Policy Period and Policy Year are used interchangeably herein.

"Policy Year" means each consecutive twelve (12) months of the Policy Period beginning on the effective date shown in the Declarations. However, if a Policy Year within a Policy Period is modified by an endorsement, then that modified year will be deemed a Policy Year for the purpose of determining the annual aggregate Limit of Liability and the annual aggregate Deductible.

"Related Claims" means all Claims for Wrongful Acts that are logically or causally connected by common facts, situations, events, transactions, decisions or advice, regardless of the number of contracts or the types of Professional Services rendered.

"Wrongful Act" means a negligent act, error, or omission, in the performance of Professional Services by an Insured or any person or entity for which the Insured is legally liable . . ."

Wrongful Act also means:

(1) an act, error or omission in the performance of Professional Services by an Insured or any person or entity for which the Insured is legally liable and that results in Personal Injury; or

(2) Pollution Incident.

**CONDITIONS**

(5) Limits of Liability and Deductible

(d) Multiple/Related Claim(s):

The inclusion herein of more than one Insured, or the making of Claim(s) by more than one person, or the inclusion of additional elements or amounts of damages, shall not operate to increase the Insurer's Limits of Liability. The Limits of Liability stated in Item 3. a. of the Declarations as applicable to each Claim(s) shall apply and only one Deductible amount shall apply thereto. The limit for each Claim(s), shown in the Declarations, is the most we will pay for the sum of all Claim(s) and Claim Expenses treated as a single Claim(s).

Related Claims will be treated as a single Claim, regardless of when the earliest Claim was made against an Insured. This Policy applies only if the earliest Claim is first made against an Insured during a Policy Year within the Policy Period shown in the Declarations and first reported to the Insurer within sixty (60) days after the end of that Policy Year.

(ECF No. 5 at 6-8 (citing ECF Nos. 5-1; 5-2.) [3]

C. The Church's Letters

In October 2016, the Church sent Defendant Architrave, among others, a letter signed by Deacon Tyrone Sanders, Sr., MBA, the Church's Business Administrator.[4] (ECF No. 5-7 at 3.) Specifically, the October Letter is addressed to Defendant Architrave and (1) Bobbit Design Build; (2) Midstate Air Conditioning, Inc.; (3) Mechanical Engineering Consulting Associates, Inc.; (4) Trane Company; and (5) Vince Williams. (ECF No. 5-7 at 2.) The October Letter raises issues of "continuing and growing maintenance problems with the HVAC units installed in this facility" and "the continual damage caused by water entering the building at ground level and . . . the roof line." (ECF No. 5-7 at 2.)

The October Letter provides:

> [The Church] is requesting you [Bobbit Design Group], your engineers and installers come to *inspect* these units and respond in kind with *solution(s)* to alleviate the mounting maintenance issues and unbearable noise levels. We are

---

[3] The Amended Complaint stipulates the following: "The policy language in the [2016-17 Policy] is similar to the language quoted from the [2017-18 Policy]
[4] The October Letter opens: "Dear Mr. Englert." Mr. Englert is listed in the Bobbit Design Build address block. (ECF No. 5-7 at 2.)

9

making this same request concerning the water entering the building. We cannot sustain the mounting cleanup costs involved each time water penetrates this facility.

(ECF No. 5-7 at 3.) (emphasis added).

The Church's December Letter is signed by Curtis E. Bostic of the Bostic Law Group.[5] (ECF No. 5-8 at 3.) The subject line is "Notice and Opportunity to Cure Construction/Design Defects," which advises that the parties must respond before a deadline as required by the Notice and Opportunity to Cure Nonresidential Construction Defects Act, S.C. Code § 40-11-500 (2019). The December Letter has a refined version of the same issues raised in the October Letter:

> The HVAC units in the new sanctuary have been in frequent need of repair. Of 18 units, 5 have experienced major malfunctions, with repeat calls on 4 of these. Blower motors, bearings, and belts have been replaced with no improvement in performance.
>
> The HVAC units in the new sanctuary are unreasonably loud during operation. The excessive noise interferes with the Church's ability to conduct its regular activities.
>
> The Church is experiencing sever water intrusion at the floor baseboards in the business office, deaconess room, [womens] bathroom, and front/rear hallways. This has caused rot and deterioration of the wall and floor components.
>
> The Church is experiencing severe water intrusion from the roof into the business office, deaconess room, and hallways. This has caused rot and deterioration of the wall and floor components.

(ECF No. 5-8 at 2-3.)

The December Letter also stipulates the following: "Be advised that you will have 60 days from the date you receive this letter to inspect, offer to remedy, offer to settle, or deny, in whole or in part, the claim of defects listed above . . . ." (ECF No. 5-8 at 3.)

### D. The Underlying Lawsuit

The Church's state court complaint includes the following allegations: (1) Defendant

---

[5] The December Letter opens: "To Whom it May Concern."

Architrave . . . [that] at all times relevant herein was doing business as the *architect of record for the [p]roject*." (ECF No. 1-3 at 5-6 ¶ 4); (2) "Bobbit Design Build . . . retained the services of [Defendant] Architrave . . . to serve as design professionals on this [p]roject." (ECF No. 1-3 at 6 ¶ 7); (3) "Bobbit [Design Build] retained the services of various other unknown subcontractors . . . to perform various scopes of work . . . ." (ECF No. 1-3 at 6 ¶ 9); (4) "Bobbit [Design Build], on its own and by and through its [s]ubcontractors, designed *and constructed* the [p]roject . . . ." (ECF No. 1-3 at 6 ¶ 10); and (5) the Underlying Lawsuit alleges construction deficiencies, and claims (a) through (e) begin: "The deficient *design and/or installation* . . ." (ECF No. 1-3 at 6-7 ¶¶ 10(a)-(e).) (emphasis added).

E. The Court's Decision

After a thorough review of the Complaint, the Answer, the pleadings and documents incorporated by reference in the pleadings, the court cannot sufficiently support a finding that either party is entitled to relief. The Policies are triggered when (1) a Claim is first made against Defendant Architrave (2) for a Wrongful Act in the performance of Defendant Architrave's Professional Services (3) that Defendant Architrave knew or could have reasonably expected the Wrongful Act might give rise to a Claim. (ECF Nos. 5-1; 5-2.) To reiterate, the Policies define a "Wrongful Act" as "a negligent act, error, or omission, *in the performance of Professional Services* by an Insured or entity for which the Insured is legally liable." (ECF No. 5-1 at 9.)

Here, there are material issues of fact as to whether Defendant Architrave committed a "Wrongful Act" and therefore "knew or could have reasonably expected that such Wrongful Act might give rise to a Claim." (ECF No. 5-1 at 5.) Stated differently, Defendant Architrave's role in the project is a relevant issue and material to the outcome of this case. The information proffered by the parties shows that Defendant Architrave was the architect of record. Thus, there is only a

11

tenuous link between the issues raised in the Church's letters – complications with the HVAC system and water leaks – and Defendant Architrave's professional liability. Absent relevant context surrounding the Church's letters and Defendant Architrave's role in the design and construction of the worship center, a decision at this juncture would require the court to depart from Fed. R. Civ. P. 12(c) and rely on mere speculation.

## IV. CONCLUSION

For the reasons above, the court **DENIES** Plaintiff RLI Insurance Company's Motion for Judgment on the Pleadings (ECF No. 18) and **DENIES** Defendant Architrave's Motion for Judgment on the Pleadings (ECF No. 24).

**IT IS SO ORDERED.**

*J. Michelle Childs*
United States District Judge

September 25, 2019
Columbia, South Carolina