IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| RLI Insurance Company, | ) |
| | ) Civil Action No. 3:18-cv-02633-JMC |
| Plaintiff, | ) |
| | ) |
| v. | ) ORDER |
| | ) |
| Architrave, Inc.; Mount Moriah | ) |
| Missionary Baptist Church, Inc., | ) |
| | ) |
| Defendants. | ) |
| | ) |

This action arises from an insurance contract dispute between Plaintiff RLI Insurance Company ("RLI"), a professional liability insurer, and Defendant Architrave, Inc. ("Architrave"), an architecture firm. The matter before the court is RLI's Motion to Alter or Amend a Judgment filed on October 17, 2019 (ECF No. 40).

### I. FACTUAL AND PROCEDURAL BACKGROUND

RLI issued two insurance policies (the "Policies") to Architrave: (1) "Professional Liability Policy Design Professionals number RDP0024719 for the Policy Period May 6, 2016 to May 6, 2017" ("Policy 2016-17") and (2) "Professional Liability Policy Design Professionals number RDP0028866 for the Policy Period May 6, 2017 to May 6, 2018, ("Policy 2017-18") (*Id*. at 2 ¶¶ 6, 7.) The Policies are "Claims Made and Reported Polic[ies]" that "provide coverage, pursuant to their terms and conditions, for 'Damages or Claim Expenses as a result of a Claim for a Wrongful Act' which is 'first made against the Insured during the Policy Period . . . .'" (*Id*. at 6.)

On September 26, 2018, RLI filed a Complaint pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 (2010). (ECF Nos. 1, 5.) On October 8, 2018, RLI amended the Complaint, adding Defendant Mount Moriah Missionary Baptist Church, Inc., ("the Church").

1

(ECF No. 5.)[1] On September 25, 2017, the Church filed a lawsuit in the Charleston County, South Carolina Court of Common Pleas ("Underlying Lawsuit") arising from the construction of its worship center. (*Id*. at 5 ¶ 20 (citing *Mt. Moriah Missionary Baptist Church v. Architrave, Inc., et. al*., C/A No. 2017-CP-10-4880.) RLI alleges that, on November 6, 2017, "Architrave provided notice of the Underlying Lawsuit to [RLI] under [Policy 2017-18] . . . at which time [RLI] requested information regarding the claim, including requests for 'any correspondence in your possession pertaining to the issues set forth in the complaint.'" (Id. at 4 ¶ 14.) Architrave allegedly represented that it communicated with the builder, Bobbit Design Build, and "attended a meeting in February of 2017 where the Church's construction problems were discussed and Bobbit offered a proposal to address the issues." (*Id*. at 4 ¶ 15.) RLI maintains that "Architrave asserted that after the meeting, it 'did not hear anything else about the matter or realize that the church was considering a lawsuit until we were served.'" (*Id*.) On December 1, 2017, RLI agreed to defend Architrave under Policy 2017-18. (*Id*. at 4 ¶ 16.) Architrave subsequently provided RLI with the Church's letters dated October 17, 2016 ("October Letter") and December 21, 2016 ("December Letter") (collectively, the "Demand Letters") (*Id*. at 4 ¶ 17.) Upon receiving the Church's Demand Letters, RLI issued a supplemental reservation of rights letter to Architrave (*Id.* at 5 ¶ 21) and filed a Complaint (ECF No. 1).

On November 19, 2018, RLI filed a Motion for Judgment on the Pleadings, claiming that Architrave "has not met its burden of showing that coverage has been triggered under either policy,

---

[1] "The Church is an eleemosynary corporation organized in the State of South Carolina and having [a] principal place of worship the church facilities [in] the City of North Charleston in Charleston County, South Carolina." (ECF No. 1-3 at 5.) Plaintiff claims that the Church "has an interest in this litigation as a potential judgment creditor of [Defendant] Architrave." (ECF No. 5 at 2, 4 ¶¶ 3, 13.)

and [RLI] owes no duty to defend or indemnify [Architrave]" in the Underlying Lawsuit. (ECF No. 18 at 1-2.) As such, RLI requests (1) a court order declaring that RLI "owes no duty to defend or indemnify [Architrave] because the Claim was not first made and reported to [RLI] during an applicable Policy Period" and (2) seeks the recovery of costs and expenses incurred defending Architrave in the Underlying Lawsuit. (*Id*. at 3 ¶ 9.) On December 17, 2018, Architrave also filed a Motion for Judgment on the Pleadings, seeking a court order declaring that RLI has a duty to defend and indemnify Architrave because the Underlying Lawsuit, not the Church's letters, triggered the Policies. (ECF No. 24 at 1.) On September 25, 2019, the court entered an order denying both parties' Motions for Judgment on the Pleadings. (ECF No. 36.) RLI filed the present Motion to Amend pursuant to Fed. R. Civ. P. 59(e) on October 17, 2019. (ECF No. 40.) Architrave filed a Response on October 31, 2019 (ECF No. 42), to which RLI filed a Reply on November 5, 2019 (ECF No. 43).

## II. LEGAL STANDARD

A. <u>Motion to Alter or Amend</u>

Under Rule 59(e) of the Federal Rules of Civil Procedure, a district court may alter or amend an earlier judgment "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; and (3) to correct a clear error of law or prevent manifest injustice." Fed. R. Civ. P. 59(e); *see also Pac. Ins. Co. v. Am. Nat. Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998). However, motions to alter or amend "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 486 n.5 (2008) (quoting 11 C. Wright & A. Miller, Federal Practice and Procedure § 2810.1, pp. 127-128 (2d ed. 1995) (footnotes omitted)). It is the moving party's burden to establish one of these three grounds in order to obtain relief

under this Rule. *See Loren Data Corp. v. GXS, Inc.*, 501 F. App'x. 275, 285 (4th Cir. 2012). The decision whether to reconsider an order pursuant to Rule 59(e) is within the discretion of the district court. *See Hughes v. Bedsole*, 48 F.3d 1376, 1382 (4th Cir. 1995).

    B.  <u>South Carolina Insurance Contracts</u>

Under South Carolina law, insurance policies are contracts and are subject to the general rules of contract construction. *See Am. Credit of Sumter, Inc. v. Nationwide Mut. Ins. Co.*, 663 S.E.2d 492, 495 (2008) (citation omitted). When interpreting an insurance application or insurance policy, courts "must give policy language its plain, ordinary, and popular meaning." *Id*. Moreover, an "insurance policy is to be liberally construed in favor of the insured and strictly construed against the insurer . . . [and] exclusions in an insurance policy are always construed most strongly against the insurer." *Id*. South Carolina courts have concluded that, "[a]n insurance policy is a contract between the insured and the insurance company, and the policy's terms are to be construed according to the law of contracts." *Williams v. Gov't Emps. Ins. Co.*, 762 S.E.2d 705, 709 (S.C. 2014). "The burden of proof is on the insured to show that a claim falls within the coverage of an insurance contract." *Sunex Int'l, Inc. v. Travelers Indem. Co. of Ill.*, 185 F. Supp. 2d. 614, 617 (D.S.C. 2001). "'Where the contract's language is clear and unambiguous, the language alone determines the contract's force and effect.'" *Id*. (quoting *McGill v. Moore*, 672 S.E.2d 571, 574 (S.C. 2009)). "'It is a question of law for the court whether the language of a contract is ambiguous.'" *Id*. at 710 (quoting *S.C. Dep't of Nat. Res. v. Town of McClellanville*, 550 S.E.2d 299, 302-03 (S.C. 2001)). "'A contract is ambiguous when it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.'" *Id*. (quoting *Hawkins v. Greenwood*

4

*Dev. Corp.*, 493 S.E.2d 875, 878 (S.C. Ct. App. 1997)). "However, these rules of construction, inuring to the benefit of the insured, do not trump clear and unambiguous policy terms because 'if the intention of the parties is clear, courts have no authority to torture the meaning of policy language to extend or defeat coverage that was never intended by the parties.'" *MGC Mgmt. of Charleston, Inc. v. Kinghorn Ins. Agency*, 520 S.E.2d 820, 823 (S.C. Ct. App. 1999) (citing *Diamond State Ins. Co. v. Homestead Indus., Inc.*, 456 S.E.2d 912, 915 (S.C. 1995).

### III. ANALYSIS

A. The Parties' Arguments

RLI asserts that "the [c]ourt committed clear error of law in its [o]rder by applying a 'reasonable expectation' standard to prong one of the Insurance Agreement, and, therefore, should amend its prior [o]rder and enter judgment on the pleadings in RLI's favor" because "each of [the] three prongs must independently be met by Architrave in order for coverage to have been triggered." (ECF No. 40 at 1-2.) RLI claims that the Demand Letters sent to Architrave by the Church "indisputably met the policy definition of a Claim." (*Id.* at 4.) Therefore, "[i]f Architrave cannot meet its burden of showing that this first requirement is satisfied . . . there is no coverage regardless of what Architrave reasonably expected." (*Id.*)

Architrave asserts that RLI only aims to relitigate the issues previously contemplated by the court. (ECF No. 42 at 1 ("RLI's present motion is essentially the same argument it made in support of its Motion for Judgment on the Pleadings albeit stated in slightly different terms. Regardless, the core issue raised by RLI remains the same: Do the 'Demand Letters' constitute a Claim under the Policy?").) On the contrary, Architrave claims that:

> RLI seeks to deprive Architrave of any ability to offer such proof by seeking judgment at the pleadings stage based entirely on its self-serving construction of the Demand Letters. As the Court has held, Architrave is entitled to offer further context and factual development of the issues raised in the Demand Letters such

5

> that judgment on the pleadings in favor of RLI is inappropriate at this early stage of the case.

(*Id.* at 2.)

B. <u>The Court's Review</u>

RLI's Motion raises the "first prong" issue alone and, thus, the court limits this order accordingly. The court's order denying the parties' competing motions for judgment on the pleadings provides:

> The information proffered by the parties shows that [] Architrave was the architect of record. Thus, there is only a tenuous link between the issues raised in the Church's letters – complications with the HVAC system and water leaks – *and* Defendant Architrave's professional liability. Absent relevant context surrounding the Church's letters *and* Defendant Architrave's role in the design and construction of the worship center, a decision at this juncture would require the court to depart from Fed. R. Civ. P. 12(c) and rely on mere speculation.

(ECF Nos. 36 at 11-12 (emphasis added).)

In determining the first prong, the court considered, and cited in its order, the relevant definitions within the Policies: (1) "'Claim(s)' means a demand received by the Insured for money or services *and* which alleges a Wrongful Act. Claim(s) includes but is not limited to lawsuits, petitions, arbitrations or other alternative dispute resolution requests filed against the Insured." (ECF No. 36 at 8 (citing ECF No. 5 at 6-8) (emphasis added).); and (2) "'Wrongful Act' means a negligent act, error, or omission, in the performance of Professional Services by an Insured or any person or entity for which the Insured is legally liable . . ." (*Id.*) In considering South Carolina precedent, the court determined that an interpretation of the Policies weighs in Architrave's favor. *See Am. Credit of Sumter, Inc.*, 663 S.E.2d at 495 ("insurance policy is to be liberally construed in favor of the insured and strictly construed against the insurer . . ."). Stated differently, to interpret the Demand Letters as triggers for the Policies is contrary to South Carolina law. *Compare Davidson & Bennett v. CNA Reinsurance Co.*, No. CIVA 2:05-1759, 2006 WL 2475305, at *1

(D.S.C. Aug. 24, 2006) ("By their own admission, [p]laintiffs received notice of the [first] lawsuit and claims contained therein in August 1999. At the hearing on this motion, plaintiffs acknowledged that the August 1999 complaint constituted a claim as defined by the policy.") As Architrave asserts concisely, "[i]n denying the competing motions for judgment on the pleadings, the [c]ourt correctly recognized that[,] *without relevant factual context surrounding the Demand Letters*, it would require 'mere speculation' . . . to rule on whether either letter could constitute a Claim under the Policy." (ECF No. 42 at 1-2 (emphasis added).) The court finds that there is no clear error of law nor manifest injustice in its order entered on September 25, 2019. *See* Fed. R. Civ. P. 59(e)

### IV. CONCLUSION

For the reasons stated above, the court **DENIES** Plaintiff RLI Insurance Company's Motion to Alter of Amend pursuant to Fed. R. Civ. P. 59(e) (ECF No. 40).

**IT IS SO ORDERED.**

*J. Michelle Childs*
United States District Judge

January 3, 2020
Columbia, South Carolina