IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| RLI Insurance Company, | ) | |
| | ) | Civil Action No.: 3:18-cv-02633-JMC |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER AND OPINION** |
| | ) | |
| Architrave, Inc. and Mount Moriah Missionary Baptist Church, Inc., | ) | |
| | ) | |
| Defendants. | ) | |

Currently before the court is Plaintiff RLI Insurance Company's ("RLI") Motion for Summary Judgment. (ECF No. 62.) Defendants Architrave, Inc. ("Architrave") and Mount Moriah Missionary Baptist Church, Inc. ("the Church") have entered Responses in Opposition to the Motion (*see* ECF Nos. 64, 65), to which Plaintiff has replied (*see* ECF Nos. 66, 67). For the following reasons, the court **DENIES** the Motion for Summary Judgment. (ECF No. 62.)

    **I.    RELEVANT FACTUAL AND PROCEDURAL BACKRGOUND[1]**

The Church hired Bobbitt Design Build ("Bobbit") to constrict a new worship center. (ECF Nos. 62-1 at 4; 64 at 1-2.) Bobbitt, in turn, hired Architrave (an architectural firm) as the design professional for the worship center. (*Id.*) The project was purportedly completed in 2013. (ECF No. 64 at 2.) Later, RLI issued two "claims made" insurance policies to Architrave: one policy for the period of May 6, 2016 to May 6, 2017, and another subsequent policy for the period of May 6, 2017 to May 6, 2018.[2] As the court previously explained, under the policies,

---

[1] The following facts are undisputed and taken in the light most favorable to Defendants.
[2] Unlike "occurrence" policies, claims/made reported policies offer coverage for claims that are made and reported during the relevant policy period. (*See* ECF Nos. 62-1 at 12-14; 62-2 at 3; 62-3 at 3; 64 at 8.)

1

> "Claim(s)" means a demand received by the Insured for money or services and which alleges a Wrongful Act. Claim(s) includes but is not limited to lawsuits, petitions, arbitrations or other alternative dispute resolution requests filed against the Insured . . . . "Wrongful Act" means a negligent act, error, or omission, in the performance of Professional Services by an Insured or any person or entity for which the Insured is legally liable[.]

(ECF No. 40 at 6 (citing ECF No. 5 at 6-8) (internal marks omitted).) (*See* ECF Nos. 62-2 at 6-7; 62-3 at 6-7.) Moreover, the term "Professional Services" is defined as "those services [Architrave] is legally qualified to perform for others[.]" (ECF Nos. 62-2 at 9; 62-3 at 9.)

To be eligible for coverage under the policies, the following conditions must have been met: (1) Architrave first received a Claim for a Wrongful Act and reported it to RLI during the policy period or within 60 days of the policy's termination. (*See* ECF Nos. 62-2 at 5; 62-3 at 5.) In particular, Architrave must have received a demand for money or services which alleged an act, error, or omission in its Professional Services. (*Id.*) (2) The Wrongful Act was committed after the relevant date. (*Id.*) (3) Architrave neither knew nor could have reasonably expected that such a Wrongful Act might give rise to a Claim prior to the policy's inception date.[3] (*Id.*)

Roughly three years after the worship center's construction, the Church sent a demand letter to organizations and individuals associated with the project, including Bobbitt; Mechanical Engineering Consulting Associates, Inc.; Midstate Air Conditioning, Inc.; Vince Williams, P.E., S.E.; Trane – Warrantor; and Architrave, on October 17, 2016. (ECF No. 62-7.) This letter outlined problems with the project, namely, issues with the HVAC system and water intrusion from the floor and roof. (*Id.*) The Church sent a similar letter in late December 2016, again addressed to the same entities and individuals and again outlining problems with the HVAC system and water intrusion. (ECF No. 62-8.) Architrave did not report these demand letters to RLI. (ECF No. 64 at

---

[3] Primarily at issue here is prong (1).

2

3.) In February 2017, the parties involved in the project met with representatives from the Church to discuss the problems raised in the demand letters. (*Id.*) But the meeting was unfruitful, as Architrave was served with a complaint in November 2017. (*Id.*) Architrave then reported the initiation of the Church's underlying case to RLI. (*Id.*)

In 2018, RLI brought the instant suit seeking a declaratory judgment that it owes no duty to defend or indemnify Architrave in the underlying lawsuit initiated by the Church based upon Architrave's allegedly untimely notice of a Claim. (ECF No. 62-1 at 1.) Since then, the court has denied Motions for Judgment on the Pleadings from both parties, and a subsequent Motion for Reconsideration by RLI. (*See* ECF Nos. 36, 49.) The court found a material fact dispute prevented granting any of the Motions. (*See id.*) RLI thereafter filed the instant Motion for Summary Judgment. (ECF No. 62.)

## II.     JURISDICTION

A federal district court has "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States." 28 U.S.C. § 1332(a). Section 1332 requires complete diversity between all parties. *Strawbridge v. Curtiss*, 7 U.S. 267, 267 (1806). Complete diversity requires that "no party shares common citizenship with any party on the other side." *Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir. 1999) (citing *Strawbridge*, 7 U.S. at 267). The court has jurisdiction over this matter because parties are fully diverse and the amount in controversy exceeds $75,000. (*See* ECF No. 5.)

## III.     LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." FED. R. CIV. P.

3

56(a). The moving party bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue of material fact for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

When considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under governable law will properly preclude the entry of summary judgment." *Id.* at 248. Further, to show that a genuine issue of material fact exists, the non-moving party must set forth facts beyond "[t]he mere existence of a scintilla of evidence." *Id.* at 252. The non-moving party must present evidence sufficient to demonstrate that a reasonable jury could return a verdict for the non-moving party in order to avoid summary judgment. *See id.* at 248.

Under South Carolina law, insurance policies are contracts and are subject to the general rules of contract construction. *Am. Credit of Sumter, Inc. v. Nationwide Mut. Ins. Co.*, 663 S.E.2d 492, 495 (2008) (citation omitted). When interpreting an insurance application or insurance policy, courts "must give policy language its plain, ordinary, and popular meaning." *Id.* Moreover, an "insurance policy is to be liberally construed in favor of the insured and strictly construed against the insurer . . . [and] exclusions in an insurance policy are always construed most strongly against the insurer." *Id.* South Carolina courts have concluded that, "[a]n insurance policy is a contract between the insured and the insurance company, and the policy's terms are to be construed according to the law of contracts." *Williams v. Gov't Emps. Ins. Co.*, 762 S.E.2d 705, 709 (S.C. 2014). "The burden of proof is on the insured to show that a claim falls within the coverage of an

4

insurance contract." *Sunex Int'l, Inc. v. Travelers Indem. Co. of Ill.*, 185 F. Supp. 2d. 614, 617 (D.S.C. 2001). "'Where the contract's language is clear and unambiguous, the language alone determines the contract's force and effect.'" *Id.* (quoting *McGill v. Moore*, 672 S.E.2d 571, 574 (S.C. 2009)). "'It is a question of law for the court whether the language of a contract is ambiguous.'" *Id.* at 710 (quoting *S.C. Dep't of Nat. Res. v. Town of McClellanville*, 550 S.E.2d 299, 302-03 (S.C. 2001)). "'A contract is ambiguous when it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.'" *Id.* (quoting *Hawkins v. Greenwood Dev. Corp.*, 493 S.E.2d 875, 878 (S.C. Ct. App. 1997)). "'Ambiguous or conflicting terms in an insurance policy must be construed liberally in favor of the insured and strictly against the insurer.'" *Id.* (quoting *Diamond State Ins. Co. v. Homestead Indus., Inc.*, 456 S.E.2d 912, 915 (S.C. 1995)). "In insurance policies, exclusion clauses are to be narrowly construed, and inclusion clauses are to be broadly construed." *See Hutchinson v. Liberty Life Ins. Co.*, 743 S.E.2d 827, 829 (S.C. 2013); *see also McPherson ex rel. McPherson v. Mich. Mut. Ins. Co.*, 426 S.E.2d 770, 771 (S.C. 1993). "However, these rules of construction, inuring to the benefit of the insured, do not trump clear and unambiguous policy terms because 'if the intention of the parties is clear, courts have no authority to torture the meaning of policy language to extend or defeat coverage that was never intended by the parties.'" *MGC Mgmt. of Charleston, Inc. v. Kinghorn Ins. Agency*, 520 S.E.2d 820, 823 (S.C. Ct. App. 1999) (citing *Diamond State*, 456 S.E.2d at 915).

## IV.     ANALYSIS

RLI contends Defendant Architrave failed to timely report the Church's demand letters and therefore did not trigger coverage under the policies. (ECF No. 62-1 at 11-12.) RLI insists the

demand letters amounted to Claims under the plain language of the policies. (*Id.* at 15-22.) In effect, RLI says a Claim was first made during the 2016-2017 policy period, but only reported during the 2017-2018 policy period after the Church initiated the underlying suit. (*Id.*) As the initial Claim was made in one policy period but reported in another, RLI maintains that Architrave does not qualify for coverage under either policy. (*Id.*) Lastly, RLI insists the court "conflated" two different questions in its prior rulings by injecting a reasonableness inquiry into whether the Church in fact made a claim based on wrongdoing by Architrave. (*Id.* at 22-23.)

Defendant Architrave begins by observing the instant Motion for Summary Judgment "is nothing more than a rehash of the same arguments that this [c]ourt declined to accept in RLI's" prior Motions. (ECF No. 64 at 4.) Architrave asserts "[n]othing has changed since the [c]ourt's ruling[,]" and RLI has not offered any additional factual context to resolve the material dispute the court previously highlighted. (*Id.* at 5.) To the contrary, Architrave points to evidence it has introduced to demonstrate a material dispute "as to whether the [d]emand [l]etters constituted a Claim for a Wrongful Act as to Architrave." (*Id.*) Architrave distinguishes several cases that RLI cites by noting the demand letters here were sent to multiple "parties who **had** responsibility and control over the scope of work which was the subject of the complaints raised in the [d]emand [l]etters." (*Id.* at 6 (emphasis in original).) Additionally, Architrave stresses it qualifies for coverage under the 2017-2018 policy, as the underlying suit was the first Claim Architrave received and Defendant promptly notified RLI. (*Id.* at 7-11.)

Here, in the light most favorable to Plaintiff, the court denies the Motion for Summary Judgment because a dispute of material fact exists whether the Church's demand letters amounted

to a Claim alleging a Wrongful Act on the part of Architrave.[4] The demand letters outlined problems with the HVAC system and water leakage from the roof and flooring. As the court previously observed: "The information proffered by the parties shows that [] Architrave was the architect of record. Thus, there is only a tenuous link between the issues raised in the Church's letters – complications with the HVAC system and water leaks – and . . . Architrave's professional liability." (ECF No. 49 at 6 (citing ECF No. 36 at 11-12).) The court went on to note that additional factual context was necessary to determine "Architrave's role in the design and construction of the worship center." (*Id.*) Yet it does not appear that RLI has provided the necessary factual context to resolve this dispute. Indeed, it seems little has changed since the court's prior denials of the parties' cross Motions for Judgment on the Pleadings and RLI's Motion for Reconsideration.[5]

Further, Architrave has submitted the affidavit of Dale M. Marshall, a principal with Architrave, who claims "Architrave had no role in the design or construction of the [HVAC] systems for the Project. Likewise, Architrave had no role in the design or construction of the civil sitework for the Project including any landscaping or exterior drainage systems." (ECF No. 64-1 at 2.) Marshall goes on to state that "[a]t no point during [the February 2017] meeting, or at any time afterwards until I was served with the [u]nderlying lawsuit, did any person allege any negligent act or any error or omission by Architrave with respect to the professional services provided by Architrave on the Project." (*Id.* at 4.) To support these assertions, Marshall attaches

---

[4] The court previously found disputed material facts "as to whether . . . Architrave committed a 'Wrongful Act' and therefore 'knew or could have reasonably expected that such Wrongful Act might give rise to a Claim.'" (ECF No. 36 at 11.) When subsequently reviewing RLI's Motion for Reconsideration, the court determined that "interpret[ing] the [d]emand [l]etters as triggers for the [p]olicies is contrary to South Carolina law." (ECF No. 49 at 6.) The court went on to emphasize, *inter alia*, the need for further factual context before deciding whether either of the demand letters constituted Claims to trigger the policies. (*Id.* at 7.)

[5] Plaintiff's contentions are nearly identical to those previously raised in these Motions. (*See* ECF Nos. 18, 40.)

Architrave's alleged "Scope of Services Agreement" with Bobbitt regarding the Church project. (*Id.* at 8-11.)

It is true the December 2016 demand letter broadly stated there were "construction/**design** defects" at the worship center, requested remedial action, was sent by an attorney, and was addressed to Architrave, along with other entities. (ECF No. 67-8 (emphasis added).) But this letter went on to only specify particular problems with the HVAC system and water intrusion through the roof and floor, while Architrave's role was purportedly limited to "architectural and structural engineering services." (ECF Nos. 62-8; 64-1 at 8.) Moreover, the October 2016 demand letter likewise outlined problems with various Trane HVAC units and water intrusion "from the floor baseboards" and "in several areas from the roof." (ECF No. 62-7.) It is thus unclear whether the scope of allegedly defective work outlined in the demand letters claimed any problems with the work Architrave completed as part of its Professional Services. This, coupled with the fact the letters were addressed to multiple recipients allegedly responsible for the identified defects, highlights a material dispute whether the demand letters amounted to Claims against Architrave by alleging Defendant specifically completed defective work, rather than one or more of the other individuals and entities listed therein.[6] Accordingly, after review in the most favorable light to Architrave, and interpreting the policies at issue in Architrave's favor, the court denies Plaintiff's Motion for Summary Judgment.[7]

---

[6] Citing to several cases, RLI argues Architrave was required to report receipt of the demand letters, regardless of the merits of the Church's claims. (ECF No. 62-1 at 17-18.) But the court observes the instant dispute is not whether Architrave subjectively believed the demand letters contained meritorious allegations; instead, the dispute is whether the demand letters constituted a Claim alleging Wrongful Acts specifically by Architrave. In other words, at issue is whether the demand letters contended that Architrave itself performed defective work.

[7] The Church also filed a short Response in Opposition, but the court finds the argument therein—that RLI's theory of the case would make its coverage illusory—is without merit. (*See* ECF No. 65.)

## V.  CONCLUSION

For the foregoing reasons, the court **DENIES** the Motion for Summary Judgment. (ECF No. 62.)

**IT IS SO ORDERED**.

*J. Michelle Childs*
United States District Judge

May 7, 2021
Columbia, South Carolina